# UNITED STATES COURT OF INTERNATIONAL TRADE
## Hon. M. Miller Baker

|  |  |  |
|---|---|---|
| OMAN FASTENERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-00348 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MID CONTINENT STEEL & WIRE, INC., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

**OMAN FASTENERS, LLC'S RESPONSE
TO THE UNITED STATES' OPPOSITION TO PLAINTIFF'S REQUEST
TO PRESENT LIVE TESTIMONY, OR IN THE ALTERNATIVE,
MOTION FOR A CONTINUANCE OF THE HEARING DATE**

Plaintiff Oman Fasteners, LLC ("Oman Fasteners") respectfully responds to the United States' Opposition to Plaintiff's Request to Present Live Testimony, or in the Alternative, Motion for a Continuance of the Hearing Date ("Opp."). *See* Ct. Int'l Trade R. 7(d).

## INTRODUCTION AND BACKGROUND

In opposition to Oman Fasteners' Motion for a Preliminary Injunction, the United States ("the Government") argues that Oman Fasteners' evidence of irreparable harm is "simply insufficient" because, among other things, it is not supported by "witnesses available for cross-examination." Government PI Opposition at 14. In response, Oman Fasteners has committed to providing live testimony from its CEO, Steve Karaga, including making Mr. Karaga available for cross-examination so that the Government can test the proof of Oman Fasteners' irreparable harm. But now, after attacking Oman Fasteners for not presenting live testimony, the Government asserts that the prospect of live testimony from Mr. Karaga is "trial by ambush" and should not be permitted. The Government cannot have it both ways—the Court should allow Mr. Karaga to testify.

The thrust of the Government's argument against Mr. Karaga testifying is that there will be no opportunity to take his deposition before the preliminary injunction hearing on January 23. But preliminary injunction motions are routinely decided without the parties engaging in discovery because, as in this case, they involve emergency requests for relief to prevent imminent, irreparable harm. Despite that, Oman Fasteners has offered to

make Mr. Karaga available for a deposition this coming week, which could occur remotely to accommodate the schedule of the Government's counsel. And if that is not acceptable to the Government for any reason, then the Government also has the option of conducting a deposition of Mr. Karaga through written questions. *See* Ct. Int'l Trade R. 31. If the Government chooses that option, Mr. Karaga will provide responses to written questions on an expedited basis.

The Government's asserted "trial by ambush" concerns also are refuted by Oman Fasteners' commitment to limit Mr. Karaga's direct testimony at the January 23 hearing to the statements and materials provided in his initial declaration and in his soon-to-be-filed supplemental declaration. The company does not intend to present any new documents at the hearing, subject to possibility of rebuttals to factual assertions introduced at the hearing by the Government or the Defendant-Intervenor. The Government will thus have full, advance knowledge of the facts on which Oman Fasteners is relying to prove irreparable harm. There will be no "trial by ambush."

We also submit that live testimony from Mr. Karaga will benefit the Court's evaluation of the evidence establishing Oman Fasteners' irreparable harm. The Government has asserted that the evidence provided by Mr.

Karaga is unpersuasive because he is "an interested party" who has provided only "uncorroborated assertions." Government PI Opposition at 13. While this assertion is belied by the extensive evidence that was provided with Mr. Karaga's declaration, including evidence from third parties, allowing Mr. Karaga to testify in person will permit the Court to evaluate for itself Mr. Karaga's credibility and to evaluate the irreparable harm that Oman Fasteners is facing.

The Court also should reject the Government's alternative request to continue the preliminary injunction hearing to or after February 6, 2023. Government's Opposition to Plaintiff's Request to Present Live Testimony ("Opp.") at 5. Because the Government has advance knowledge of the evidence that Oman Fasteners' will rely on at the January 23 hearing, and has had an opportunity to depose Mr. Karaga, it will not be prejudiced by proceeding with the hearing as scheduled. By contrast, postponing the hearing for two weeks and delaying the emergency relief that Oman Fasteners needs will increase its irreparable harm to an even more perilous level.

Accordingly, the Court should deny the Government's requests and allow Oman Fasteners to submit Mr. Karaga's live testimony at the January 23, 2023 hearing on Oman Fasteners' motion for preliminary injunction.

## ARGUMENT

There is no order in place for discovery on Oman Fasteners' motion for preliminary injunction, and no rule that prohibits introduction of evidence before — or live testimony during — the January 23 hearing. The Government nevertheless argues primarily that the Court should prevent Mr. Karaga from testifying because its counsel is too busy to depose him before he testifies.

As an initial matter, the Government is not entitled to any pre-preliminary injunction discovery at all, let alone Mr. Karaga's deposition. Pre-trial discovery is granted by Court rule, it is not a due process right. *See NLRB v. Interboro Contractors, Inc.*, 432 F.2d 854, 857–58 (2d Cir. 1970) ("It is well settled that parties … are not entitled to pre-trial discovery as a matter of constitutional right."). And there is no rule of this Court granting discovery ahead of preliminary injunction hearings. *See* Ct. Int'l Trade R. 65 (no mention of discovery in preliminary injunction proceedings); Ct. Int'l Trade R. 26 (same). Because preliminary injunction motions involve imminent threats of potential harm that necessitate expedited schedules, it is common for witnesses to testify at hearings on such motions without having been deposed. Here, Oman Fastener's motion for a preliminary injunction is proceeding on

an expedited schedule, due to this Court's and the Government's recognition of the urgency with which Oman Fasteners needs relief. This urgency was created by the Department of Commerce ("Commerce"), which delayed its final decision by an additional month despite knowing the harm it would cause Oman Fasteners.

Even without a deposition of Mr. Karaga, the Government is hardly "respond[ing] blindly" to Mr. Karaga's testimony. Opp. 4. The Government already has vast amounts of Oman Fasteners' financial data from the administrative review proceedings, as well as Mr. Karaga's declaration and the accompanying exhibits, submitted on December 26, 2022. The Government will also receive additional data and updated information about Oman Fastener's irreparable harm in Mr. Karaga's supplemental declaration, which Oman Fasteners will provide with its reply brief on January 17. This extensive record of the circumstances giving rise to the company's irreparable harm, including detailed financial information, provides the Government with all the evidence Oman Fasteners intends to use at this time at the hearing to prove its harm. There will be no secrets or surprises, and the Government will have a full and fair opportunity to prepare for Mr. Karaga's cross-examination.

As further protection against any surprise or unfairness, as stated, Oman Fasteners commits to limit Mr. Karaga's direct testimony at the January 23 hearing to the statements and materials provided in his initial declaration and in his soon-to-be-filed supplemental declaration. Oman Fasteners does not intend to present any new documents at the hearing, subject to possibility of rebuttals to factual assertions introduced at the hearing by the Government or the Defendant-Intervenor. The Government will therefore have full, advance knowledge of the facts on which Oman Fasteners is relying to prove irreparable harm.

Accordingly, this situation is far from the "trial by ambush" in *Klonoski v. Mahlab*, 156 F.3d 255, 271 (1st Cir. 1998), where undisclosed "letters [we]re allowed in evidence after a trial started" in violation of the discovery rules and the court's pretrial discovery orders. Opp. 4. There is no order in place for discovery on Oman Fasteners' motion for preliminary injunction, and no rule that prohibits live testimony at the hearing. Moreover, unlike in *Klonski*, the January 23 hearing involves only a preliminary injunction, not the trial on the merits.

Importantly, the Government is free to depose Mr. Karaga if it wishes. Oman Fasteners has offered to make Mr. Karaga available for deposition

prior to the January 23 hearing. Oman Fasteners also offers the Government the option to conduct the deposition remotely, which would eliminate travel time and give the Government maximum flexibility. Or the Government could also depose Mr. Karaga on written questions, and Mr. Karaga will respond on an expedited basis. *See* Ct. Int'l Trade R. 31.

The Government argues that it cannot depose Mr. Karaga before the January 23, 2023 hearing because the hearing is in four business days and counsel has oral argument before the Court of Federal Claims on January 19. Opp. 3 n.1. These arguments are unpersuasive.

First, the condensed timeline should come as no surprise. The Government agreed to an expedited briefing schedule in recognition of the urgency of this matter for Oman Fasteners. It has been obvious since before Commerce's final decision on December 16, 2022, that Oman Fasteners would need to seek immediate injunctive relief.

The Government argues that it would not have agreed to the expedited schedule if it knew that Oman Fasteners intended to call Mr. Karaga to testify live. That assertion makes little sense. The agreement involved only the briefing schedule, not the hearing or introduction of evidence, and the Government agreed to the briefing schedule on December 23, 2022, three days

*before* this Court inquired about the prospect of live witnesses. The Government did not request or receive any representations from Oman Fasteners' counsel regarding the type or timing of any evidence that Oman Fasteners would present in support of a preliminary injunction.

Second, Government counsel Ms. Geddes's January 19 oral argument in another case does not preclude the Government from taking Mr. Karaga's deposition. If Ms. Geddes is not available to depose Mr. Karaga before January 23, other Government counsel could take the deposition—especially because Mr. Karaga's testimony is limited to the issue of irreparable harm, and thus his deposition does not require significant familiarity with the underlying merits of this case. The reality of motions for preliminary injunctions is that, by their very nature, they must always be presented and decided on an expedited basis, which results in tight deadlines and inconvenience for the parties and their counsel. One lawyer's inability to attend a deposition does not outweigh the compelling need for creating a robust record of the irreparable harm facing Oman Fasteners.

There also is no merit to the Government's assertion that Oman Fasteners waived its opportunity to present live testimony. Opp. 5. While the company did not initially anticipate a need to present Mr. Karaga's live

testimony, *see J. Conrad LTD v. United States*, 457 F. Supp. 3d 1365, 1375 n.9 (Ct. Int'l Trade 2020) (holding that a "detailed, non-conclusory, and non-speculative" affidavit can support a preliminary injunction), that changed when the Government specifically complained that this Court could not grant an injunction without the opportunity to cross-examine Mr. Karaga. *See* Government's PI Opposition at 14 (Oman Fasteners' evidence of irreparable harm is "simply insufficient" because, among other things, it is not supported by "witnesses available for cross-examination"). The Government's January 10 opposition to Oman Fasteners' motion was the first time any party raised the need for live testimony. Oman Fastener responded promptly, informing the parties and the Court on January 12 that it intends to have Mr. Karaga testify at the hearing.

Oman Fasteners also submits that live testimony from Mr. Karaga will benefit the Court's evaluation of the preliminary injunction motion, especially the evidence establishing Oman Fasteners' irreparable harm. The Court will be able to evaluate for itself Mr. Karaga's credibility, and to consider the irreparable harm facing Oman Fasteners. *See J. Conrad LTD*, 457 F. Supp. 3d at 1375 n.9 (expressing a preference, when possible, for live testimony in open court).

In short, Oman Fasteners has now provided what the Government requested: a witness available for cross-examination. And the company also offers the opportunity for the Government to depose him before the hearing. Accordingly, there is no basis to exclude Mr. Karaga from testifying at the January 23 hearing.

There is also no basis at all to continue the hearing. For all the reasons that Oman Fasteners has previously explained, a two-week extension would severely prejudice Oman Fasteners by increasing its mounting irreparable harm.

**CONCLUSION**

Oman Fasteners respectfully requests that this Court continue to allow live testimony at the January 23, 2023 hearing, and deny the Government's request to continue the hearing.

| | |
|---|---|
| Dated: January 14, 2023 | /s/ Michael R. Huston |

Michael R. Huston
Michael P. House
Andrew Caridas
**Perkins Coie LLP**
700 Thirteenth St., NW
Washington, D.C. 20005
202-654-6200
mhuston@perkinscoie.com

*Counsel for Oman Fasteners*
