## UNITED STATES COURT OF INTERNATIONAL TRADE

_____

| | |
|---|---|
| OMAN FASTENERS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| MID CONTINENT STEEL & WIRE, INC., | ) |
| | ) |
| Defendant-Intervenor. | ) |

Court No. 22-00348

_____)

## <u>ORDER</u>

Upon consideration of plaintiff's comments regarding the

Department of Commerce's Final Results of Redetermination Pursuant

to Court Remand, dated July 17, 2023, ECF No. 110-1 (Remand

Results), defendant's response thereto, and all other pertinent papers, it

is hereby

ORDERED that Commerce's Remand Results are sustained in all

respects; and it is further

ORDERED that judgment will enter in favor of the United States.

SO ORDERED.

_____

Judge

Dated: _____, 2023
New York, New York

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

| | | |
|---|---|---|
| OMAN FASTENERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-00348 |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MID CONTINENT STEEL & WIRE, INC., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

_____

## DEFENDANT'S RESPONSE TO
## <u>COMMENTS ON REMAND REDETERMINATION</u>

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL:
IAN A. MCINERNEY
Attorney
Department of Commerce
Office of the Chief Counsel
    for Trade Enforcement
    & Compliance


September 22, 2023

KELLY M. GEDDES
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 451-7664
E-mail: Kelly.Geddes2@usdoj.gov


Attorneys for Defendant

# **TABLE OF CONTENTS**

BACKGROUND ............................................................................ 2

SUMMARY OF ARGUMENT ................................................... 4

ARGUMENT .............................................................................. 4

   I.  Standard Of Review........................................................ 4

   II.  Commerce's Decision To Calculate Oman Fasteners' Dumping Margin Without Relying Upon Facts Otherwise Available Is Based On Substantial Evidence, In Accordance with Law, and Complies With The Remand Opinion And Order ........................ 5

   III.  Commerce's Decision to Use Quarterly Costs to Calculate Oman Fasteners' Dumping Margin is Based on Substantial Evidence and in Accordance with Law ........................................................ 7

   IV.  Commerce's Treatment of Section 232 Duties Is Based on Substantial Evidence and in Accordance with Law.................. 14

CONCLUSION ......................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Borusan v. Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 63 F.4th 25, 34-35 (Fed. Cir. 2023) ...................................................... 15

*Fujitsu General Ltd. v. United States*, 88 F.3d 1034 (Fed. Cir. 1996) ..... 7

*Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States*, 625 F. Supp. 2d 1339 (Ct. Int'l Trade 2009) ........................................... 7

*MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ............................................................................................. 4

*Oman Fasteners, LLC v. United States*, 520 F. Supp. 3d 1332 (Ct. Int'l Trade 2021) ......................................................................................... 16

*PrimeSource Building Products, Inc. v. United States* 59 F.4th 1255 (Fed. Cir. 2023) ............................................................................... 17

*Rebar Trade Action Coalition v. United States*, 503 F. Supp. 3d 1295 (Ct. Int'l Trade 2021) ............................................................................... 8

*SeAH Steel Corp. v. U.S.*, 704 F. Supp. 2d 1353  (Ct. Int'l Trade 2010) .. 8

*Thai Pineapple Pub. Co. v. United States*, 187 F.3d 1362 (Fed. Cir. 1999) ................................................................................................................ 11

*United States v. Eurodif S.A.*, 555 U.S. 305 (2009) .................................. 4

## Statutes

19 U.S.C. § 1516a ........................................................................................ 4

19 U.S.C. § 1677 ................................................................................. 14, 17

19 U.S.C. § 1677a ...................................................................................... 14

19 U.S.C. § 1677e .................................................................................... 2, 5

19 U.S.C. § 1862 ........................................................................................ 15

## Other Authorities

*Proclamation 9705: Adjusting Imports of Steel Into the United States*, 83
   Fed. Reg. 11,625 (Mar. 8, 2018) ........................................................... 15

*Proclamation 9980: Adjusting Imports of Derivative Aluminum Articles
   and Derivative Steel Articles into the United States*, 85 Fed. Reg. 5281
   (Jan. 24, 2020) ................................................................................. 15, 16

## Administrative Determinations

*Steel Concrete Reinforcing Bar from Taiwan*, 82 Fed. Reg. 34,925 (Dep't
   of Commerce July 27, 2017) ................................................................. 10

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____
)
OMAN FASTENERS, LLC,                            )
)
        Plaintiff,                              )
)
    v.                                          )      Court No. 22-00348
)
THE UNITED STATES,                              )
)
        Defendant,                          )
)
    and                                         )
)
MID CONTINENT STEEL & WIRE,             )
INC.,                                           )
)
       Defendant-Intervenor.               )
_____)

## DEFENDANT'S RESPONSE TO
## COMMENTS ON REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response

to the comments filed by Defendant-Intervenor, Mid Continent Steel &

Wire, Inc. (Mid Continent), ECF No. 117 (Mid Continent's Cmts.), on

the final remand redetermination issued by the Department of

Commerce pursuant to *Oman Fasteners, LLC v. United States*, Slip Op.

23-17 (Ct. Int'l Trade Feb. 15, 2023) (Remand Opinion) and

accompanying order (ECF No. 91) (Remand Order), which remanded to

Commerce the final results of the sixth administrative review of the antidumping duty order covering certain steel nails from the Sultanate of Oman. *See Steel Nails from Oman, Final Results of Antidumping Duty Administrative Review; 2020-2021*, 87 Fed. Reg. 78,639 (Dep't of Commerce Dec. 22, 2022) (Final Results).

## BACKGROUND

Commerce published the final results of the sixth administrative review of antidumping duty order covering steel nails from Oman on December 22, 2022. *See* Final Results. As discussed in the accompanying IDM (available at ECF 72-3), petitioner Oman Fasteners, LLC (Oman Fasteners) had not submitted all portions of its response to Commerce's section C supplemental questionnaire by the deadline. IDM at 6-7. Commerce therefore rejected the response, found that necessary information was missing from the record as a result, and concluded that the use of facts available was therefore warranted pursuant to 19 U.S.C. § 1677e(a). *Id.* at 6-10, 12. Commerce further found that Oman Fasteners failed to cooperate to the best of its ability in complying with a request for information, within the meaning of 19 U.S.C. § 1677e(b)(1). *Id.* at 12-15. Consequently, Commerce applied an

adverse inference when using facts available, and assigned Oman Fasteners the margin alleged in the petition (*i.e.*, 154.33 percent). *Id.* at 19-20.

The Court remanded the final results to Commerce, concluding that Commerce abused its discretion both when it rejected Oman Fasteners' supplemental questionnaire response and when it applied an adverse inference. Remand Opinion at 12. Thus, the Court remanded the case and ordered that on remand, Commerce accept Oman Fasteners' response to the section C supplemental questionnaire and consider that response for purposes of calculating Oman Fasteners' rate. Remand Order ¶3.

In accordance with the Court's order, Commerce reopened the administrative record to permit Oman Fasteners to re-file its response to the section C supplemental questionnaire. Commerce also issued several supplemental questionnaires in response to Oman Fasteners' submissions. Then, Commerce released the draft results of the redetermination, in which it assigned Oman Fasteners a 0.00 percent dumping margin. Appx01490. Commerce provided interested parties the opportunity to submit comments. Both Oman Fasteners and Mid

Continent submitted comments on the draft redetermination.  After considering those comments, Commerce issued its final remand results, in which the dumping margin was unchanged.  *See* Appx01000-50 (July 17, 2023) (Remand Results).

Mid Continent filed comments in opposition to Commerce's Remand Results on August 23, 2023.

## SUMMARY OF ARGUMENT

The Court should sustain the remand results because Commerce complied with the remand order, and its determination is supported by substantial evidence and otherwise in accordance with law.

## ARGUMENT

I.    Standard Of Review

In remand proceedings, the Court will sustain Commerce's antidumping determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law."  *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)); *see also United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009).

4

II.   Commerce's Decision To Calculate Oman Fasteners' Dumping
      Margin Without Relying Upon Facts Otherwise Available Is Based
      On Substantial Evidence, In Accordance with Law, and Complies
      With The Remand Opinion And Order

In the remand opinion, the Court held that "Commerce abused its

discretion by not granting Oman {Fasteners} a retroactive extension"

and that, consequently, Commerce's reliance on adverse facts available

was unlawful.  Remand Opinion at 18-19.  The Court ordered

Commerce to accept the supplemental section C questionnaire response

and "consider that supplemental section C response for purposes of

calculating Oman's rate."  Remand Order ¶3.  Commerce complied with

that order; Commerce reopened the record to allow Oman Fasteners to

resubmit its supplemental section C questionnaire response, and

Commerce treated that submission as timely.  *See* Remand Results at

27-30 (Appx01026-1029).  Accordingly, Commerce determined that

there was no longer any necessary information missing from the record

and therefore no legal basis to use facts available pursuant to 19 U.S.C.

§ 1677e(a) or an adverse inference pursuant to 19 U.S.C. § 1677e(b).  *Id.*

This determination, which follows logically from the Court's remand order, is supported by substantial evidence and in accordance with law.

Mid Continent argues that the Court was incorrect to conclude that Commerce abused its discretion when it applied an adverse inference to calculate Oman Fasteners' dumping margin.  Mid Continent's Cmts. at 1-6.  Mid Continent acknowledges that it is reiterating arguments it has previously made to the Court and to Commerce, and that it is asking the Court to "reconsider its earlier analysis."  *Id.* at 6.  Mid Continent also notes that it is repeating these arguments to preserve these issues for appeal.  *Id.* at 2; *see generally* Mid Continent's Response in Opposition to motion for Preliminary Injunction, ECF No. 45 (Jan. 5, 2023).

However, as we have explained, Commerce's remand results are supported by substantial evidence, are in accordance with law, and comply  with the Court's remand order.  They should therefore be sustained.

III.   Commerce's Decision to Use Quarterly Costs to Calculate Oman
       Fasteners' Dumping Margin is Based on Substantial Evidence and
       in Accordance with Law

To calculate the dumping margin, Commerce calculates a

weighted-average cost of production for the period of review.

Commerce's normal practice is to calculate the weighted-average cost on

an annual basis.  *See Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi*

*A.S. v. United States*, 625 F. Supp. 2d 1339, 1344 (Ct. Int'l Trade 2009);

*see generally Fujitsu General Ltd. v. United States*, 88 F.3d 1034, 1038-

39 (Fed. Cir. 1996) (upholding Commerce's analysis with respect to

determining whether annual weighted-average cost of production is the

appropriate methodology for assigning costs to a respondent).

However, Commerce recognizes that possible distortions may

result from this method if a respondent experiences significant cost

changes during portions of the period of review.  Therefore, Commerce

will deviate from its normal methodology of calculating an annual

weighted-average cost and rely on quarterly costs if two criteria are

met: (1) the change in the cost of manufacturing recognized by the

respondent during the period of review is significant; and (2) the record

evidence indicates that sales prices during the shorter cost averaging

periods could be reasonably linked with the cost of production or constructed value during the same shorter cost averaging periods. Remand Results at 35-36 (Appx01034-5); *see also SeAH Steel Corp. v. U.S.*, 704 F. Supp. 2d 1353, 1358 (Ct. Int'l Trade 2010).  In analyzing the first criterion, Commerce applies a 25 percent threshold to determine whether changes in the cost of manufacturing are significant enough to warrant a departure from Commerce's standard annual-average cost methodology.  Draft Remand Results at 25 (Appx01489); *see also Rebar Trade Action Coalition v. United States*, 503 F. Supp. 3d 1295, 1300-01 n. 6 (Ct. Int'l Trade 2021).

In the remand results, Commerce applied this framework and determined that it was appropriate to rely on quarterly costs to calculate Oman Fasteners' dumping margin.  First, Commerce determined that a majority of the top five CONNUMs[1] sold by Oman

---

[1]  A "CONNUM" is a contraction of the term "control number," and is Commerce jargon for a unique product (defined in terms of a hierarchy of specified physical characteristics determined in each antidumping proceeding).  All products whose product hierarchy characteristics are identical are deemed to be part of the same CONNUM and are regarded as "identical" merchandise for purposes of the price comparison.  The hierarchy of product characteristics defining a unique CONNUM varies from case to case depending on the nature of the product.

Fasteners to the United States by volume during the period of review

indicate a significant variation (*i.e.*, greater than 25 percent) in direct

material costs.  *See* Remand Results at 36 (Appx01035); *see also* Draft

Remand Results at 24-26 (Appx01488-01490) ; Draft Results Analysis

Memorandum at 7 (Appx08565) (Remand C.R. 124), Attachment 4

(Remand C.R. 126)[2]; Final Remand Redetermination Analysis

Memorandum at Attachment 3 (Remand C.R. 139).  Second, Commerce

determined that a majority of the top ten CONNUMs by volume sold to

the United States during the period of review indicate a positive

correlation between the quarterly changes in cost of manufacturing and

average United States price.  *Id.*  It reached this conclusion by

comparing weighted-average quarterly sales prices to the corresponding

weighted-average quarterly costs of manufacturing for high volume

CONNUMs.  *See* Draft Remand Results at 25 (Appx01489), *see also*

Draft Remand Analysis Memorandum at Attachment 4 (Remand C.R.

126).  Based on this comparison, Commerce found that it was

---

[2] An electronic version of this Excel document will be provided to the Court.  Electronic versions of C.R. 66-88 and C.R. 139, also cited herein, will be provided as well.

reasonable to conclude there was a linkage between the changing sales prices and the changing cost of manufacturing.  *Id.*

Mid Continent argues that the percentage of the CONNUMs that meet the required 25 percent threshold, a number that is proprietary, (see number in Mid Continent's Cmts. at 8, citing Appx07326-28), is not enough for Commerce to depart from its normal practice of relying upon an annual weighted-average cost.  Mid Continent's Cmts. at 8.  But Mid Continent provides no authority for this position.  Mid Continent acknowledges that the majority of the largest-volume CONNUMs varied in price and costs by more than 25 percent, but then states without explanation that the amount is insufficient.  *Id.* at 8.  However, Commerce followed its normal practice of considering whether a *majority* of CONNUMs examined experienced a cost change of greater than 25 percent.  *See, e.g.*, *Steel Concrete Reinforcing Bar from Taiwan*, 82 Fed. Reg. 34,925 (Dep't of Commerce July 27, 2017) (final LTFV determ.), and accompanying IDM at Comment 2 ("{Commerce} considers the change in cost to be significant when the majority of CONNUMs examined experienced a cost change in excess of 25 percent.").  Mid Continent does not demonstrate that Commerce's

practice is unreasonable, nor does Mid Continent cite any authority in support of its argument that Commerce must rely on some unspecified higher threshold.  Accordingly, it has failed to overcome the presumption that Commerce has selected an appropriate methodology. *See Thai Pineapple Pub. Co. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999) (explaining Commerce is "master of antidumping law" and its methodologies are "presumptively correct").

Mid Continent also argues that Oman Fasteners failed to provide actual direct material (or "DIRMAT") costs on a quarterly basis, such that the findings discussed above—that the direct material costs varied significantly, and that they correlated with sales variations—are unsupported.  Mid Continent's Cmts. At 8-10.

However, Commerce's determinations are supported by substantial evidence.  As Commerce explained, in Oman Fasteners' initial section D questionnaire response it stated that it "has reported drawn wire costs based on the quarterly weighted-average actual per-unit drawn wire consumption values as per its cost accounting system." Remand Results at 37 (Appx01036).  It further explained its methodology:

11

> {Oman Fasteners} calculated the costs of drawn
> wire for each finished good item by multiplying
> the required drawn wire quantity by the unit
> price of the particular drawn wire type mapped to
> the nail in the cost accounting system.  The
> resultant costs are aggregated and compared to
> the actual consumption figures in Oman
> Fasteners' general ledger for drawn wire. The
> small variances are then allocated back to The
> drawn wire costs to ensure the reported costs are
> consistent with the figures in Oman Fasteners'
> records.

AR6 Record Exhibits Pt. 2 at Exhibit 35a at page 24 therein

(Appx03300).  At Exhibit D-7 of the initial section D questionnaire

response, Oman Fasteners provides quarterly-cost DIRMAT

calculations showing the derived drawn wire costs based on the

standard costs embedded in the cost accounting system, before then

applying the quarterly cost adjustment factor to derive the adjusted cost

(column E therein), which is then divided across the production

quantity to derive the drawn wire per-unit adjusted cost.  *See* AR6

Record Exhibit 35c at Exhibit D-7 therein (Remand C.R. 66-88).  This

adjusted drawn wire per-unit quarterly cost serves as the basis for the

figures Oman Fasteners provided in Exhibit S3-3 to support the

application of its quarterly cost methodology and the figures reported in

the quarterly-cost database.  *See* AR6 Record Exhibit 62c at Exhibit S3-

3 therein (Appx07338-60).  Therefore, Commerce reasonably determined that Oman Fasteners provided the quarterly costs needed to determine whether application of a quarterly cost methodology was appropriate.  *See generally* Remand Results at 37 (Appx01036).

Mid Continent argues that Commerce's analysis "glosses over how the adjustment factor was calculated."  *See* Mid Continent Comments at 9.  According to Mid Continent, "the Exhibit S3-3 worksheet sets out an adjustment factor that was only calculated on an annual basis."  *Id.* at 10.  However, Mid Continent also acknowledges that there are two sets of adjustment factors in Exhibit S3-3—"Adjustment Factor (Annual)" and "Adjustment Factors (Quarterly)"—and Oman Fasteners relied on the latter adjustment factors to derive its adjusted costs.  *Id.* at 9.  Thus, there is no record support for Mid Continent's claim that Oman Fasteners relied on an annual adjustment factor.  Moreover, although Mid Continent asserts that the values reported as "Adjustment Factors (Quarterly)" were provided without underlying "data, formulas, or calculations," Mid Continent does not explain why the absence of such information renders Oman Fasteners' data unreliable or inaccurate.

13

In sum, Commerce's decision to rely upon its quarterly costs methodology when calculating Oman Fasteners' dumping margin is based on substantial evidence, in accordance with law, and should be sustained.

IV.   Commerce's Treatment of Section 232 Duties Is Based on Substantial Evidence and in Accordance with Law

Mid Continent argues that Commerce should have deducted certain import duties from the export price of Oman Fasteners' merchandise during the period of review, even though those duties were not actually imposed or paid at the time of entry, but rather may be applied retroactively following a recent Federal Circuit decision. For the reasons explained below, Commerce's determination not to deduct these duties was based on substantial evidence and in accordance with law.

To calculate the dumping margin, Commerce calculates an adjusted export price for the subject merchandise by making certain additions and subtractions to the price at which the subject merchandise was sold in the United States. *See* 19 U.S.C. § 1677a. When calculating that price, Commerce subtracts "the amount, if any,

14

included in such price, attributable to any…United States import duties." *Id.* § 1677(c)(2)(A).

"United States import duties" include duties imposed by the President pursuant to section 232 of the Trade Expansion Act of 1962, as amended (Section 232 duties). *See Borusan v. Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 63 F.4th 25, 34-35 (Fed. Cir. 2023). Section 232 grants the President the authority to impose tariffs on certain articles that are being imported into the United States in such quantities or under such circumstances that threaten or impair national security. *See* 19 U.S.C. § 1862(b); (c). On March 8, 2018, pursuant to his authority under Section 232, the President imposed a 25 percent ad valorem tariff on imports of certain steel articles from most countries. *See Proclamation 9705: Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625 (Mar. 8, 2018). He later issued another proclamation extending the tariff to derivatives of the steel articles covered by Proclamation 9705. *See Proclamation 9980: Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles into the United States*, 85 Fed. Reg. 5281 (Jan. 24, 2020). Those

derivatives included steel nails that are the subject of this antidumping duty review.  *Id.* at 5291.

On February 7, 2020, Oman Fasteners brought an action in this Court challenging the legality of Proclamation 9980.  *See Oman Fasteners, LLC v. United States*, No. 1:20-cv-00037 (Ct. Int'l Trade).  On February 21, 2020, the Court issued an order that allowed Oman Fasteners to post bonds covering Section 232 duties, in lieu of depositing duties with Customs and Border Protection (CBP) at the time of entry, as would normally be required.  *Id.* at ECF No. 34.  On June 10th, 2021, the Court issued a decision concluding that the Section 232 duties were unlawful.  *Oman Fasteners, LLC v. United States*, 520 F. Supp. 3d 1332, 1339 (Ct. Int'l Trade 2021).  Accordingly, CBP did not collect Section 232 duties on Oman Fasteners' entries of subject merchandise during the period of review, although Oman Fasteners did pay Section 232 duties on three entries.  Remand Results at 49.  In the remand results, Commerce determined to deduct only the Section 232 duties that Oman Fasteners actually paid.  *Id.* at 49-50.

Mid Continent argues that this decision is incorrect because in February 2023, the Court of Appeals for the Federal Circuit reversed

this Court's judgment and concluded that Proclamation 9980, and the

Section 232 duties it imposed on derivative products such as steel nails,

to be lawful. *PrimeSource Building Products, Inc. v. United States* 59

F.4th 1255 (Fed. Cir. 2023) (Petition for Certiorari Docketed on July 25,

2023). Mid Continent therefore argues that "Section 232 duties

presently are owed" and that these duties should have been deducted

from Oman Fasteners's export price pursuant to 19 U.S.C.

§ 1677(c)(2)(A). *See* Mid Continent Cmts. at 10-13.

However, Commerce's decision to deduct only Section 232 duties

that were actually paid was supported by substantial evidence and in

accordance with law. The statute instructs Commerce to deduct only

"the amount, if any, *included in [the export] price*, attributable to

any…United States import duties." 19 U.S.C. § 1677(c)(2)(A) (emphasis

added). This case presents an unusual situation in which the exporter

was not paying import duties at the time of entry, when the export price

was paid, but was found to be liable for them in a decision issued years

after the period of review (which is not yet final due to the pending

petition for certiorari). It was reasonable for Commerce to conclude

that, under these circumstances, duties later found to retroactively

17

apply to Oman Fasteners' entries were not "included in" the actual prices of those sales absent evidence to the contrary. And Mid Continent offers no justification for its unsupported assumption that, if a party is ultimately found to owe duties, those duties must have therefore been included in a price that was paid at an earlier time. Accordingly, Mid Continent has not shown that Commerce's determination was unreasonable, unsupported by the record, or otherwise not in accordance with the law.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand results and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL:                          s/ Kelly M. Geddes
IAN A. MCINERNEY                     KELLY M. GEDDES
Attorney                            Trial Attorney
Department of Commerce              U.S. Department of Justice
Office of the Chief Counsel         Civil Division
   for Trade Enforcement    Commercial Litigation Branch
   & Compliance              P.O. Box 480
                                    Ben Franklin Station
                                    Washington, D.C.  20044
                                    Tel: (202) 451-7664
                                    E-mail: Kelly.Geddes2@usdoj.gov


September 22, 2023                   Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

Defendant's counsel certifies that this brief complies with the Court's type-volume limitation rules.  According to the word count calculated by the Microsoft Word processing system used to prepare this brief, I certify that this brief contains 3,114 words.

<u>/s/ Kelly M. Geddes</u>

September 22, 2023