# UNITED STATES COURT OF INTERNATIONAL TRADE
## Hon. M. Miller Baker

OMAN FASTENERS, LLC,

       Plaintiff,

   v.

UNITED STATES,

       Defendant,

   and

MID CONTINENT STEEL & WIRE, INC.

       Defendant-Intervenor.

Court No. 22-00348

**PUBLIC VERSION**

## COMMENTS OF PLAINTIFF OMAN FASTENERS, LLC IN SUPPORT OF COMMERCE'S REMAND REDETERMINATION

# TABLE OF CONTENTS

**<u>Page</u>**

Table of Authorities .................................................................................. ii

Glossary .................................................................................................... iv

Introduction ............................................................................................... 1

Argument .................................................................................................... 2

    I.  Mid Continent Provides No Basis to Reconsider the Remand
        Order.................................................................................................. 2

   II.  Commerce Properly Used Quarterly Costs to Calculate the
        Dumping Margin. ............................................................................. 6

 III. Commerce Properly Deducted Section 232 Duties for Entries on
        Which Oman Fasteners Paid Section 232 Duty Deposits ............... 11

Conclusion................................................................................................ 15

# TABLE OF AUTHORITIES

Page

C<span style="font-variant:small-caps">ASES</span>

*BMW of N. Am. LLC v. United States*,
   926 F.3d 1291 (Fed. Cir. 2019) ............................................................. 5

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008) ............................................................................. 2

*Parsons Evergreene, LLC v. Sec'y of Air Force*,
   968 F.3d 1359 (Fed. Cir. 2020) ............................................................. 2

*POSCO v. United States*,
   296 F. Supp. 3d 1320 (Ct. Int'l Trade 2018) ........................................ 5

*PrimeSource Bldg. Prods. v. United States*,
   59 F.4th 1255 (Fed. Cir. 2023) ........................................................... 13

*PrimeSource Building Products, Inc. v. United States*,
   Case No. 23A69 (S.Ct. Jul. 21, 2023) ................................................. 14

*PSC VSMPO-Avisma Corp. v. United States*,
   688 F.3d 751 (Fed. Cir. 2012) .............................................................. 4

S<span style="font-variant:small-caps">TATUTES</span>

19 U.S.C. § 1677a ........................................................................... 11-13

O<span style="font-variant:small-caps">THER</span> A<span style="font-variant:small-caps">UTHORITIES</span>

*Certain Steel Nails From India: Final Affirmative Determination of Sales at Less*
   *Than Fair Value; 2020-2021*, 87 Fed. Reg. 78,937 (Dep't Commerce
   Dec. 23, 2022) ................................................................................... 12

*Certain Steel Nails From India: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures; 2020-2021*, 87 Fed. Reg 47,719 (Dep't Commerce Aug. 4, 2022)...................................................................................................... 12

*Certain Steel Nails From the Sultanate of Oman: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2021-2022*, 88 Fed. Reg. 52,120 (Dep't Commerce Aug 7, 2023)................................................................................................................. 6

*Circular Welded Carbon Steel Standard Pipe and Tube Products From Turkey: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2017-2018*, 84 Fed. Reg. 34,345 (Dep't Commerce July 18, 2019) .................................................................. 12

*Circular Welded Carbon Steel Standard Pipe and Tube Products From Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017-2018*, 85 Fed. Reg. 3616 (Dep't Commerce Jan. 22, 2020) ................................................................. 12

# GLOSSARY OF ABBREVIATIONS

- "Commerce" refers to the United States Department of Commerce, the agency which issued the determination that is the basis of this action— Certain Steel Nails from the Sultanate of Oman: Final Results of Antidumping Duty Administrative Review; 2020-2021, 87 Fed. Reg. 78,639 (Dec. 22, 2022).

- "CONNUM" refers to a Commerce "control number" in the underlying antidumping proceeding, which corresponds to a subset of subject merchandise matching specific criteria (*i.e.*, in this proceeding, steel nails of a specific material, length, thickness, and finish).

- "DIRMAT" refers to the cost of "direct materials" used to produce a specific CONNUM.

- "Final Redetermination" refers to Commerce's July 17, 2023 Final Results of Redetermination, ECF No. 110.

- "Remand Order" refers to this Court's February 15, 2023 opinion and remand order, *Oman Fasteners, LLC v. United States*, Slip Op. 23-17, ECF No. 96.

## INTRODUCTION

Pursuant to U.S. Court of International Trade Rule 56.2, Oman Fasteners, LLC ("Oman Fasteners") submits these comments on the U.S. Department of Commerce's ("Commerce") July 17, 2023 Final Results of Redetermination, ECF No. 110 ("Final Redetermination") pursuant to this Court's opinion and remand order, *Oman Fasteners, LLC v. United States*, Slip Op. 23-17, Court No. 22-00348 (Feb. 15, 2023), ECF No. 96 ("Remand Order"). These comments are timely filed under the deadline specified in the Court's order dated August 1, 2023, ECF No. 113.

Oman Fasteners respectfully requests that this Court affirm the Final Redetermination.

## ARGUMENT

### I. Mid Continent Provides No Basis to Reconsider the Remand Order

Mid Continent insists that "Oman Fasteners' actions warrant the application of total adverse facts available" and asks this Court to "reconsider its earlier analysis" to the contrary. M.C. Comments 1, 6 (capitalization normalized). As Mid Continent acknowledges, however, its arguments are nothing new; in fact, even as it asks for reconsideration, Mid Continent disingenuously claims that it seeks merely to "preserve all issues for appeal" by regurgitating the same points that this Court previously heard "in briefs and during oral argument." M.C. Comments 2.

Even if Mid Continent had something new to add, reconsideration "may not be used to relitigate old matters." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 (2008); *Parsons Evergreene, LLC v. Sec'y of Air Force*, 968 F.3d 1359, 1369 (Fed. Cir. 2020). But in response to the Court's determination that "this is not a close case," and that Commerce's prior application of total adverse facts available was "the very definition of abuse of discretion," Remand Order 4, 12, Mid Continent's five-page recap of its greatest hits from prior briefing and argument amounts to nothing.

2

Commerce's Final Redetermination—setting Oman Fasteners' duty rate to 0.0%—confirms the soundness of this Court's conclusion that the original rate of 154.33% was an egregious abuse of discretion. Now that this Court has forced Commerce to employ a lawful administrative process, the agency has come to a well-reasoned decision that is supported by substantial evidence and otherwise in accordance with law.

In any event, even if Mid Continent's old arguments could be a basis for reconsideration, none of those arguments has improved since this Court rejected both Commerce's initial reliance on total adverse facts available and initial selection of a 154.33% adverse-inference rate—and explained why in a detailed 38-page opinion. *See* Remand Order. Therein, the Court specifically explained why Mid Continent's reliance on *Dongtai Peak* was (and continues to be) misplaced. Remand Order 15 n.10. In *Dongtai Peak*, Commerce reasonably excluded "responses filed *ten days* after the deadline" whereas here, the agency excluded a response filed a mere 16 minutes late and "within the 15½-hour window" covered by Commerce's "automatic extension" rule until 8:30am the next business day. *Id.* That

distinction was "essential" the Court's reasoning. *Id.* And that essential distinction remains.

Mid Continent also charges this Court with disregarding *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751 (Fed. Cir. 2012) by "set{ting} aside application of a proper administrative procedure because it believes that properly excluded yield a more accurate result if the evidence were considered." M.C. Comments 3 (quoting 688 F.3d at 760-61). But that argument ignores the Court's actual analysis. The Court did not reject Commerce's resort to an adverse inference purely for the sake of accuracy, but rather because Commerce's administrative procedure was *improper*: the agency's administrative decision said "nothing about *why*" it "concluded that Oman {Fasteners} failed to cooperate to the best of its ability by missing a filing deadline by 16 minutes." Remand Order 20. Commerce's failure to explain its decision violated both the Federal Circuit's requirement that Commerce must "examine respondent's action and assess the extent of respondents abilities, efforts and cooperation" in this context and the Supreme Court's requirement that agencies must explain their reasoning. *Id.* at 20-21 (citations omitted).

Finally, Mid Continent says that Commerce's punitive 154.33% rate would "induce future full cooperation by Oman Fasteners" and was "not plucked from thin air" but had previously been "validated by Commerce." M.C. Comments 4-5. But as this Court previously explained, Commerce's administrative decision offered no reasoning whatsoever that could justify "selection of the highest rate" possible. Remand Order 22 (quoting *POSCO v. United States*, 296 F. Supp. 3d 1320, 1349 (Ct. Int'l Trade 2018)). Despite "the Federal Circuit ha{ving} repeatedly admonished {Commerce that} an adverse inference rate cannot be punitive or aberrational and must 'reflect{ } the seriousness of the non-cooperating party's misconduct,'" "Commerce made no effort to justify the draconian sanction it imposed here." Remand Order 23 (quoting *BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1301 (Fed. Cir. 2019)).

Nor, by any stretch of the imagination, was the 154.33% rate—or any adverse facts available determination—necessary to induce full cooperation by Oman Fasteners. Oman Fasteners cooperated fully with Commerce's conduct of the sixth administrative review both before and after this Court's remand, as Commerce's selection of a 0.0% dumping

margin following remand demonstrates. Indeed, Oman Fasteners'
cooperation has continued, leading Commerce to likewise select a 0.0%
dumping margin in its preliminary results in the ongoing seventh
administrative review. *Certain Steel Nails from Oman*, 88 Fed. Reg. 52,120
(Dep't Commerce Aug 7, 2023) (prelim. results).

Mid Continent has not come close to providing a basis that would
warrant reconsideration of this Court's Remand Order.

## II.    Commerce Properly Used Quarterly Costs
to Calculate the Dumping Margin

Mid Continent argues that Commerce improperly used quarterly
costs to calculate the dumping margin in the Final Redetermination,
claiming "two significant issues with the agency's position." M.C.
Comments 8. Mid Continent asserts first that the data did not meet the
threshold requirement of significant cost changes during the period of
review, and second that Oman Fasteners failed to provide actual quarterly
costs. *Id.* Mid Continent's arguments are wrong on both counts and
Commerce's use of quarterly costs in the Final Redetermination was well-
reasoned, consistent with law, and supported by substantial evidence in
the record.

In fact, Mid Continent defeats its own argument. As Mid Continent notes, Commerce found that the application of the quarterly cost methodology was appropriate because the "majority of Oman Fasteners' top CONNUMs {(subcategories of subject nails)} sold to the United States pass {Commerce's} test for significant changes in direct material costs and pass our test for correlation between cost of manufacturing and U.S. price." Appx01035; *see* M.C. Comments 7. Mid Continent then makes clear that the record plainly supports Commerce's conclusion: in Mid Continent's own words, "[          ] {i.e., *the majority*} of the CONNUMs meets the required threshold." M.C. Comments 8 (citing Appx07326-07328). This is because, "[                              ] CONNUMs sold in the U.S. market have a variation in prices and costs greater than 25 percent," as do "[                         ]." *Id.; see also* Final Redetermination Analysis Memorandum at Attachment 3.

Next, Mid Continent argues that the use of quarterly costs is not appropriate because Oman Fasteners failed to provide direct material costs on a quarterly basis. M.C. Comments 8, 10. But Mid Continent's accusation is based on a gross mischaracterization of Oman Fasteners' Exhibit S3-3

(Appx07342), wherein Mid Continent claims that the "Exhibit S3-3 worksheet sets out an adjustment factor that was only calculated on an annual basis." M.C. Comments 10.

In fact, Exhibit S3-3 presents *both* annual *and* quarterly adjustment factors. Appx07342. Mid Continent's argument appears to rest on the inclusion of the word "annual" in the title of the exhibit, M.C. Comments 9, but wholly discounts the portion of the exhibit labeled "Adjustment Factors (Quarterly)," which unsurprisingly identifies the adjustment factor for each quarter. *Id.* In fact, Exhibit S3-3 plainly shows both an annual adjustment factor of [          ] and quarterly adjustment factors of [

          ]. Appx07342.

Similarly, Mid Continent's complaint that Exhibit S3-3 does not provide the calculations underlying each of these quarterly adjustment factors is a red herring. M.C. Comments 9. Exhibit S3-3 was prepared in response to Commerce's request (in the third supplemental questionnaire) that Oman Fasteners "{p}lease confirm that the direct material costs reported in the section D response directly match the manufacturing costs, adjusted for raw material cost variances, recorded in Oman Fasteners'

normal course of business." Appx07297. As part of its section D response, Oman Fasteners had provided an *example* calculation worksheet for the highest-selling CONNUM. In order to provide further support for the confirmation that Commerce had requested, Oman Fasteners provided, as an *example*, the calculation worksheet for the annual adjustment factor it had previously applied. Commerce had not requested that calculation worksheet, nor calculation worksheets for any of the quarterly adjustment factors. Thus Oman Fasteners fully complied with Commerce's request for confirmation, and, further, provided Exhibit S3-3 as an *example* to demonstrate the basis for that confirmation. However, Exhibit S3-3 was not designed to exhaustively demonstrate the calculation of each adjustment factor, because that was well beyond the scope of Commerce's request. Mid Continent essentially faults Oman Fasteners for *only* going one step beyond what Commerce requested, instead of continuing further.

Moreover, as Commerce explained, Oman Fasteners provided actual direct material costs on a quarterly basis in part 1 of Exhibit D-7. *See* M.C. Comments 8 (quoting Appx01035-01036). Commerce's thorough analysis in the Final Redetermination supports this point:

The petitioner alleges that Oman Fasteners did not provide actual DIRMAT on a quarterly basis, and instead provided standard quarterly cost information and quarterly adjustment factors based on the actual annual DIRMAT. However, this allegation is unfounded.{[1]} . . . At Exhibit D-7 of the initial section D questionnaire response, Oman Fasteners provides quarterly-cost DIRMAT calculations showing the derived drawn wire costs based on the standard costs embedded in the cost accounting system, *before then applying the quarterly cost adjustment factor* to derive the adjusted cost (column E therein), which is then divided across the production quantity to derive the drawn wire per-unit adjusted cost. This adjusted drawn wire per-unit quarterly cost serves as the basis for the figures Oman Fasteners provided in Exhibit S3-3 to support the application of its quarterly cost methodology and the figures reported in the quarterly-cost COP database." . . . As such, we find that the quarterly cost information on the record matches Oman Fasteners' actual costs for the POR, and we have continued to rely on this information to calculate a dumping margin for these final results of redetermination.

---

[1] Unfounded arguments and mischaracterizations by Mid Continent are a recurring theme in this proceeding. There are *many* instances in the Final Redetermination where Commerce found "petitioner's arguments regarding alleged discrepancies in Oman Fasteners' data {to be} unfounded and {to} mischaracterize record evidence," or where it found Mid Continent's requests for correction "unnecessary and inappropriate" and Mid Continent's allegations of "discrepanc{ies}" to be "not supported by record evidence"; Commerce also found that "{Mid Continent} mischaracterizes the Court's order." *See, e.g.,* Final Redetermination at 28, 31, 32, 34, 36.

Final Redetermination 36-38 (emphasis in original; footnotes omitted).

As Commerce noted in the Final Redetermination, these quarterly adjustment factors are used to calculate the quarterly direct material costs in Exhibit D-7. While the formulas may not be present in Exhibit S3-3, that exhibit's purpose was to demonstrate the use of the adjustment factors in calculating quarterly costs, not the other way around; and Commerce was satisfied with the quarterly costs on the record. Accordingly, the Court should affirm Commerce's use of quarterly costs.

III.    **Commerce Properly Deducted Section 232 Duties for Entries on Which Oman Fasteners Paid Section 232 Duty Deposits**

In calculating the antidumping margin in this proceeding, Commerce properly deducted Section 232 duties from the U.S. prices of the three entries for which Oman Fasteners paid Section 232 duty deposits during the period of review. Contrary to the Mid-Continent's claims, Commerce's treatment of Section 232 duties on remand was well-reasoned and supported by law, as well as consistent with the agency's own well-established practice.

In prior proceedings, Commerce has treated Section 232 duties as "United States import duties" for purposes of 19 U.S.C. § 1677a,[2] and has correspondingly made deductions from the price of entries equal to "the amount, *if any*, included in such price, attributable to … United States import duties, which are incident to bringing the subject merchandise from the original place of shipment in the exporting country to the place of delivery in the United States." *Id.* § 1677a(c)(2)(A).[3] Consistent with this practice, and with the underlying statute, the Final Redetermination only deducted such Section 232 duty deposits as Oman Fasteners actually paid (*i.e.* which were "incident to bringing the subject merchandise … to the …

---

[2] *See, e.g., Circular Welded Carbon Steel Standard Pipe and Tube Products from Turkey*, 84 Fed. Reg. 34,345 (Dep't Commerce July 18, 2019) (prelim. results) and accompanying Preliminary Decision Memorandum, at 11-13, unchanged in *Circular Welded Carbon Steel Standard Pipe and Tube Products from Turkey*, 85 Fed. Reg. 3616 (Dep't Commerce Jan. 22, 2020) (final results) and accompanying IDM, at Comment 3.

[3] *See* section 772(c)(2)(A) of the Act (emphasis added); *see also Certain Steel Nails from India*, 87 Fed. Reg 47,719 (Dep't Commerce Aug. 4, 2022) (prelim determ), and accompanying Preliminary Decision Memorandum at 10-12, unchanged in *Certain Steel Nails from India*, 87 Fed. Reg. 78,937 (Dep't Commerce Dec. 23, 2022) (final determ) and accompanying IDM, at Comment 2.

United States") during the period of review. Mid Continent's contrary position that Commerce should also make deductions for Section 232 duties that were *not* paid, M.C. Comments 11-12, has no basis in the antidumping statute.

Mid Continent's argument that "Commerce's approach … ignored the decision by the Federal Circuit," which "overturned the CIT and affirmed the applicability of Section 232 duties on steel derivatives," misses the point. M.C. Comments 11 (citing *PrimeSource Bldg. Prods. v. United States*, 59 F.4th 1255 (Fed. Cir. 2023)). Per 19 U.S.C. § 1677a(c)(2)(A), Commerce's determinations as to the deduction of Section 232 duties were based not on the status of legal proceedings challenging the Section 232 duties, but on the straightforward factual question of whether Oman Fasteners paid Section 232 duty deposits on the relevant entry. The possibility that Oman Fasteners may ultimately pay additional Section 232 duties at a later date is irrelevant, as is the possibility that the duty deposits Oman Fasteners did pay may be refunded in the event that Oman

Fasteners successfully challenges the Federal Circuit's decision via a petition for a writ of certiorari.[4]

Irrespective of these possible future events, the record reflects that during the period of review, Oman Fasteners was not required to—and for the most part did not—make Section 232 duty deposits. As Commerce found, Oman Fasteners reported that it did not pay any Section 232 duties on its entries except for three entries due to clerical error, and the company provided "completed explanations and a reconciliation to the total Section 232 duties figure reported in the U.S. sales database." Appx01048. Accordingly, under the applicable law, Commerce was not authorized to— and therefore properly *did not*—deduct Section 232 duties which Oman Fasteners did not pay, and which therefore were not incident to the importation of the subject merchandise.

---

[4] Oman Fasteners' petition is due on October 20, 2023, *see Oman Fasteners, LLC v. United States*, Case No. 23A237 (S.Ct.), and Oman Fasteners' co-appellee in the Federal Circuit case has already filed its petition, *see* Petition for a Writ of Certiorari, *PrimeSource Building Products, Inc. v. United States*, Case No. 23A69 (S.Ct. Jul. 21, 2023).

Mid Continent's objection should therefore be disregarded, and the Court should affirm Commerce's treatment of Section 232 duties in the Final Redetermination.

## CONCLUSION

For the reasons set forth above, Oman Fasteners respectfully requests

that this Court affirm Commerce's Final Redetermination.

Dated:      September 22, 2023

/s/ Andrew Caridas
Michael R. Huston
Michael P. House
Andrew Caridas
PERKINS COIE LLP
700 Thirteenth St., NW
Washington, D.C. 20005
202-654-6200
acaridas@perkinscoie.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of September, 2023, I electronically

filed a copy of the foregoing using the CM/ECF system, which sent a

notification of such filing to all counsel of record.


/s/ Andrew Caridas
Andrew Caridas

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the word count limitations in the Court's Standard Chamber Procedures, in that the brief contains 2642 words, including headings, footnotes and quotations, as tallied by the word-processing software used in its preparation.

/s/ Andrew Caridas
Andrew Caridas