**PUBLIC VERSION**

**Slip Op. 24-1**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

**Court No. 22-00348**

OMAN FASTENERS, LLC,

*Plaintiff,*

v.

UNITED STATES,

*Defendant,*

and

MID CONTINENT STEEL & WIRE, INC.,

*Defendant-Intervenor.*

Before: M. Miller Baker, Judge

**OPINION**

[The court sustains the Department of Commerce's remand redetermination.]

Dated: January 5, 2024

*Adam H. Gordon*, *Jennifer M. Smith*, and *Benjamin J. Bay*, The Bristol Group PLLC of Washington, DC, on the comments for Defendant-Intervenor.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; *Tara K. Hogan*, Assistant Director; and *Kelly M. Geddes*, Trial Attorney, Commercial Litigation Branch, Civil Divi-

## PUBLIC VERSION

sion, U.S. Department of Justice of Washington, DC, on the comments for Defendant. Of counsel on the comments was *Ian A. McInerney*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce of Washington, DC.

*Michael R. Huston*, *Michael P. House*, and *Andrew Caridas*, Perkins Coie LLP of Washington, DC, on the comments for Plaintiff.

   *Baker*, Judge: In this return visit following remand, a domestic competitor challenges the Department of Commerce's redetermination of the dumping margin for an Omani producer and importer of steel nails. Finding the decision to be supported by substantial evidence, the court sustains it.

## I

   The court's previous opinion provides the factual and procedural backdrop here. *See Oman Fasteners, LLC v. United States*, Ct. No. 22-00348, Slip Op. 23-17, at 5–10, 2023 WL 2233642, at **2–3 (as amended, CIT Feb. 22, 2023), *appeal pending*, No. 2023-1661 (Fed. Cir. Mar. 27, 2023). To summarize, Plaintiff Oman Fasteners, LLC, filed one part of a supplemental questionnaire response 16 minutes late, so Commerce rejected the entire response as untimely and struck it from the record. *Id.* at 5, 7, 2023 WL 2233642, at *2, *3. The Department found that the response's absence

**PUBLIC VERSION**

meant the record lacked "necessary information," re-
quiring the use of facts otherwise available under
19 U.S.C. § 1677e(a). *Id.* at 9, 2023 WL 2233642, at *3.
Finding that Oman's 16-minute delay represented a
failure to cooperate justifying the use of an adverse in-
ference in selecting from among the facts otherwise
available, Commerce assigned the company a 154.33
percent rate. *Id.* at 9–10, 2023 WL 2233642, at *3.

Oman brought this suit and sought a preliminary
injunction requiring the government to collect anti-
dumping duty deposits from the company at the preex-
isting 1.65 percent rate set in the preceding adminis-
trative review. *Id.* at 4, 2023 WL 2233642, at *1. The
court conducted an evidentiary hearing, found that
"Commerce's challenged actions here are the very def-
inition of abuse of discretion," and granted judgment
on the agency record and injunctive relief to Oman. *Id.*
at 4–5, 2023 WL 2233642, at **1–2. The court re-
manded and directed the Department to place the
company's supplemental response on the record and to
consider it for purposes of calculating the dumping
rate. ECF 91, ¶ 3.

On remand, Oman resubmitted its supplemental
response, Appx01000, which Commerce used along
with other information to calculate an estimated
weighted-average dumping margin of zero.
Appx01001–01002. One result of that outcome is that
the private litigants have traded places. Mid Con-

**PUBLIC VERSION**

tinent, notionally a defendant-intervenor, now challenges the Department's redetermination, while Oman, notionally the plaintiff, supports it.

II

Oman brought this suit under 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(iii), which allow an interested party who was a party to an antidumping proceeding to contest Commerce's final determination. The court has subject-matter jurisdiction over such actions under 28 U.S.C. § 1581(c).

The standard of review for a remand redetermination is the same as that on previous review. *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (CIT 2002). In actions brought under 19 U.S.C. § 1516a(a)(2), "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). That is, the question is not whether the court would have reached the same decision on the same record—rather, it is whether the administrative record as a whole permits Commerce's conclusion.

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if

**PUBLIC VERSION**

> substantial evidence exists, we review the rec-
> ord as a whole, including evidence that supports
> as well as evidence that fairly detracts from the
> substantiality of the evidence.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373,
1379 (Fed. Cir. 2003) (cleaned up).

## III

Mid Continent's challenge to the remand redeter-
mination raises three issues: (1) whether Commerce
should have rejected Oman's supplemental question-
naire response and assigned the company a 154.33
percent dumping margin based on the use of facts oth-
erwise available with an adverse inference, *see* ECF
116, at 1–6—an argument that the court rejected in its
earlier opinion and is pending on appeal;[1] (2) whether
the Department erred by using quarterly costs, in-
stead of annual costs, to calculate Oman's margin, *see*
ECF 116, at 6–10; and (3) whether Commerce erred by
not deducting Section 232 duties from the U.S. sales
prices for all of Oman's entries, rather than just three
entries, *id.* at 10–13. The court addresses the latter
two questions.

---

[1] Because an appeal is pending, the court lacks jurisdiction
to reconsider this issue. *See* 20 *Moore's Federal Practice—
Civil* § 303.32[2][a][ii].

**PUBLIC VERSION**

A

In analyzing whether "there are reasonable grounds to believe or suspect that sales of the foreign like product have been made at prices that are less than" the cost of production, Appx01022–01023, Commerce stated that its "normal practice is to calculate an annual weighted-average cost" for the period of review. Appx01023. It explained, however, that sometimes it deviates from this practice based on "two primary criteria":

> (1) the change in the cost of manufacturing recognized by the respondent during the [period of review] must be deemed significant; and (2) the record evidence must indicate that the sales prices during the shorter cost averaging periods could be reasonably linked with the [cost of production] or [constructed value] during the same shorter cost-averaging periods.

*Id.* (defined term omitted).

The Department found that Oman's cost data here met both criteria. First, "record evidence shows that Oman Fasteners experienced significant cost changes (*i.e.*, changes that exceeded 25 percent) between the high and low quarterly" cost of manufacturing during the relevant period. Appx01024. Second, because the cost changes were significant, the Department

**PUBLIC VERSION**

examined whether there was "evidence of a linkage" between the cost changes and sales prices during the relevant period and found that there was a "reasonable correlation" between them sufficient to find a "linkage." *Id.* Because the data satisfied both criteria, Commerce based its cost-averaging analysis on quarterly, rather than annual, data. Appx01024–01025.

Mid Continent now argues that the Department erred in so departing from its normal practice of relying on annual data. ECF 116, at 7. The company asserts that there are "two significant issues with the agency's position." *Id.*

First, Mid Continent contests Commerce's finding that the "majority of Oman Fasteners' [control numbers][2] sold to the United States pass our test for significant changes in direct material costs and pass our test for correlation between cost of manufacturing

---

[2] "Control number" refers to a system Commerce uses "[t]o ensure that the normal value can accurately be compared to the export price or constructed export price for the same product." *Dalian Meisen Woodworking Co. v. United States*, 571 F. Supp. 3d 1364, 1369 (CIT 2021). "All products whose product hierarchy characteristics are identical are deemed to be part of the same control number and are regarded as identical merchandise for the purposes of comparing export prices to normal value." *Id.* at 1370 (quoting *Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321, 1340 (CIT 2020)).

## PUBLIC VERSION

and U.S. price." ECF 116, at 7–8 (quoting Appx01035).
But Mid Continent *acknowledges* that the majority of
Oman's control numbers experienced significant
changes in material costs. *See* ECF 117, at 8.[3] It ap-
pears that the former's theory is that not enough of the
latter's control numbers satisfied the test for a "signif-
icant change," but it is silent about what percentage it
believes *would* be enough. The Department's finding
that a majority of Oman's control numbers experi-
enced significant changes in material costs is sup-
ported by substantial evidence, as Mid Continent has
effectively admitted that fact.

Mid Continent's second line of attack is that Oman
did not provide "direct material costs on a quarterly
basis," ECF 116, at 8, thereby undermining the De-
partment's finding that Oman experienced significant
changes in material costs. Mid Continent asserts that
Oman's data comes from a worksheet that "sets out an
adjustment factor that was only calculated on an

---

[3] Mid Continent argues that "[[
                        ]] [control numbers] sold in the U.S. mar-
ket have a variation in prices and costs greater than 25
percent" and that "[[
     ]]" satisfy that criterion. ECF 117, at 8. Therefore, the
company contends, "[b]ecause [[              ]] of the
[control numbers] meet[ ] the required threshold, the use
of quarterly costs methodology is not warranted in this
case." *Id.* But [[             ]] *is a majority*, just as Commerce
found.

### PUBLIC VERSION

annual basis," *id.* at 10, and further contends that although Oman's worksheet includes quarterly adjustment factors, "no data, formulas, or calculations for how those values were derived were given." *Id.*

Mid Continent, however, acknowledges that Oman relied on these quarterly adjustment factors to calculate its costs and that Commerce in turn used these factors. *Id.* at 9–10. Mid Continent's real complaint is that Oman did not provide the underlying calculations, but it's the Department's job—not the court's—to determine the weight to accord to Oman's data. Accordingly, substantial evidence supports Commerce's decision to base its cost-averaging analysis on Oman's quarterly, rather than annual, data.

### B

The last issue Mid Continent raises is whether Commerce should have deducted Section 232 duties from Oman's U.S. sales prices in calculating the antidumping margin. (The lower the U.S. sales price of an imported product, the more likely that either a duty will be imposed or that any such duty will be higher.) Mid Continent acknowledges that an injunction in a different case exempted Oman from paying such duties at the time of importation but argues that because the Federal Circuit has since reversed that ruling, "Section 232 duties presently are owed, and have accrued or been paid on Oman Fasteners' entries of steel

## PUBLIC VERSION

nails made during the [period of review]," and therefore Commerce should have deducted those duties, "whether accrued or paid." ECF 116, at 11–12 (citing *PrimeSource Bldg. Prods. v. United States*, 59 F.4th 1255 (Fed. Cir. 2023)).

First some background: The Department imposed the original antidumping duty order on Oman's steel nails in 2015.[4] The Tariff Act of 1930, as amended, requires Commerce to conduct "periodic" reviews—generally known as "administrative reviews"—of the amount of duty. *See* 19 U.S.C. § 1675. In short, the Department examines the imports during the relevant 12-month period of review to determine their normal value (home market sales price) and export price or constructed export price (U.S. sales price) to determine whether, and how much, dumping occurred during that 12-month period. *See id.* § 1675(a)(1)(B) (requiring reviews); *id.* § 1675(a)(2)(A) (requiring that Commerce determine the normal value and export price or constructed export price, as well as the dumping margin, for each entry during the period of review); *see also* Appx01003 (stating that Commerce sought "to determine whether Oman Fasteners' sales of steel nails

---

[4] *See Certain Steel Nails from the Republic of Korea, Malaysia, the Sultanate of Oman, Taiwan, and the Socialist Republic of Vietnam*, 80 Fed. Reg. 39,994 (Dep't Commerce July 13, 2015).

## PUBLIC VERSION

from Oman to the United States during the [period of review] were made at less than normal value").

The period of review at issue here covered July 1, 2020, through June 30, 2021. *See* Appx01000. In January 2020, shortly before the start of that period, the President issued Proclamation 9980, which imposed a 25 percent duty under Section 232 of the Trade Expansion Act of 1962[5] on certain steel derivative products, including Oman's steel nails. *See* Proclamation 9980 of January 24, 2020, *Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles into the United States*, 85 Fed. Reg. 5281 (Jan. 29, 2020). As a result of initially successful litigation that Oman brought in this court challenging the legality of Proclamation 9980, *see Oman Fasteners, LLC. v. United States*, 520 F. Supp. 3d 1332 (CIT 2021), *rev'd sub nom. PrimeSource Bldg. Prods., Inc.*, 59 F.4th 1255 (Fed. Cir. 2023), *pet. for cert. filed*, No. 23-432 (U.S. Oct. 20, 2023), the company was not required to pay Section 232 duties on any of its entries during the period of review.

The remand redetermination explains that Mid Continent argued that because Oman "is now required to pay Section 232 duties" due to the Federal Circuit's decision, Commerce should deduct those amounts

---

[5] Section 232 is codified, as amended, at 19 U.S.C. § 1862.

## PUBLIC VERSION

from all prior sales during the period of review. Appx01048. The Department generally declined, stating that the administrative record established that Oman did not pay Section 232 duties during the period of review except for three entries.[6] Appx01048–01049. As the government aptly puts it, "Commerce determined to deduct only the Section 232 duties that Oman Fasteners actually paid." ECF 120, at 16 (citing ECF 110-1, at 49–50).

The government correctly explains that the Department's statutory obligation is to deduct "the amount, if any, *included in [the export] price*, attributable to any . . . United States import duties." *Id.* at 17 (emphasis in original) (quoting 19 U.S.C. § 1677a(c)(2)(A)). The words "included in [the export] price" are the key. Mid Continent cites no evidence to show that Oman's pricing reflected amounts attributable to Section 232 duties. As the government persuasively argues, "Mid Continent offers no justification for its unsupported assumption that, if a party is ultimately found to owe duties, those duties must have therefore been included in a price that was paid at an earlier time." *Id.* at 18. Oman's summation is surely correct: "Commerce's determinations as to the deduction of Section 232 duties were based not on the status of legal proceedings

---

[6] Commerce did deduct Section 232 duties for those three entries. Appx01049.

**PUBLIC VERSION**

challenging the Section 232 duties, but on the straight-
forward factual question of whether Oman Fasteners
paid Section 232 duty deposits on the relevant entry."
ECF 122, at 13. The court therefore finds that the De-
partment's decision not to deduct Section 232 duties,
except as to the three entries for which Oman actually
paid them, was both lawful and supported by substan-
tial evidence.

\*   \*   \*

For the foregoing reasons, the court **SUSTAINS**
the Department of Commerce's remand redetermina-
tion. Judgment shall issue. *See* USCIT R. 58(a).

Dated:   January 5, 2024          /s/ *M. Miller Baker*
         New York, NY             Judge